Oh yes, oh yes, the Honorable Appellate Court, 5th District, State of Illinois, is now in session. Please be seated. Good morning. The first case called for oral argument is Peters v. Herrin Community School District. Before we start, I want to note, on behalf of the panel, that we've reviewed the motion, the supplement, and we grant it. Counsel, whenever you're ready, be seated. Please, the Court, I'm going to address, if I can, the Woven 1 issue first. I think that is a question of fact, and I'm going to put it to Rob. Could you speak just a little bit louder, please? Sorry, sir. That's okay. I've heard that a bunch of times before. Usually from the court reporters. Too long and too fast. I've been threatened by court reporters many times. Sorry. I want to address the Woven 1 issue first. I think that their allegations are there. That's a question of fact. The Court was wrong in the grand summary judgment on that issue. But the big issue is the immunity question. The law is that the character of the property is an issue and is in use for recreational purposes. And the issue here is very, very simple. Is football camp non-compulsory, extracurricular? Is that considered educational? And I don't know the answer to that. I urge the conclusion that Judge, I'm sorry, that Coach Carnes gave in his answers. He talked about it being educational. He obviously wasn't talking about grammar. He starts out by saying, well, football, for me personally, is not nothing but money. So he missed the grammar part. But the rest of that talks about what he thinks is important for education. And I think what we all think is important for education. The case I just cited to you recently, the Abrams case, is given to take it away. The Abrams case talked about extracurricular activities like musical and drama practices or dramatic practices are part of the operational process. And it goes on to say recreation, as cited in other cases, recreation includes sports, physical activities, et cetera. That's dicta. And I think that's the question. If this had been the band marching on that field, would it have been recreational or educational? And it boils down to the character of the property that's used and boils down to, finally, is football educational? That's the bottom line. What about the jurisdiction issue that was raised by the defendant as far as the negligence count? In other words, the summary judgment on that count was not included in the notice of appeal. We don't get to what was talked about if we don't have jurisdiction. I thought we corrected that by amending the notice of appeal. Well, there was a motion to amend that I think was denied. Then that obviously is a problem. But I thought the court has the right to accept jurisdiction over those issues. They can be fully addressed by everybody here. And I think that this is an important issue. This was here before the court once before. Judge Fulmer wrote a dissenting opinion where he concluded, in effect, that since it was extracurricular and not recreational, that it was, I mean, since it was extracurricular, it was recreational. And I think it's an important issue the court should consider. Thank you, counsel. Counsel? Thank you. Please support. My name is Candace Cussmer. I'm here on behalf of Defendants Appellees here in Community School District No. 4 and the school board. At the outset, Your Honors, I did want to address the jurisdictional issue that we had raised. As the court knows, in its March 5, 2014 order, it denied plaintiff's motion to amend the Record on Appeal, which attempted to amend the Notice of Appeal. Plaintiff's Notice of Appeal in this case was filed September 19, 2013. And the only subject matter before this court pursuant to that Notice of Appeal is the trial court's granting of a motion for summary judgment on count 2 of plaintiff's third amended complaint. That was the order dated August 21, 2013, and concerns only the Wolfland 1 count. Plaintiff attempted to amend the appeal to also include the trial court's granting of a motion for summary judgment as to count 1, the negligence count, on plaintiff's second amended complaint. So even a prior complaint to the current complaint that we're on, this was a May 23, 2012 order. As defendants noted in their opposition to that, Rule 303 does not prevent that amendment after a 30-day, quote, safety valve time period after the initial Notice of Appeal is filed. Like I said, this court granted—I'm sorry, this court denied plaintiff's motion but said that the parties could argue in their appellee briefs and reply briefs regarding whether further argument regarding the additional proceedings should be proper. Defendants did this in their appellee brief. We went through Rule 303 requiring the Notice of Appeal to specify the judgment or part thereof what orders appealed from and the relief sought from the reviewing court and that it provides that within 30 days after expiration of the time for filing the Notice of Appeal, a party may, on motion supported by a showing of reasonable excuse for failure to file a Notice of Appeal on time, uptake, leave to amend. In this case, they did not do that within a 30-day safety valve, and this court does not have jurisdiction under Illinois law. That's the Ebert case that we cited, Brinkman and Naperville South Commons. That being said, I am prepared to respond to plaintiff's negligence argument, should the court consider it. Regarding the motion for summary judgment, the court's order granting it, under Rule—under Section 3106 of the Tort Immunity Act, it removes the liability of a public entity when the liability is based on the existence of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings, or other enclosed recreational facilities. The purpose of the Act was to encourage and promote the development and maintenance of parks, playgrounds, and recreational areas, and to prevent the diversion of public funds for payment of damage claims. In this case, the property at issue was intended or permitted for recreational purposes. It was a practice football field which hosted extracurricular football camps in the summer months. This didn't occur during the school year. It didn't occur during seventh-hour football, something like that. This field was used solely for football, discus, and shot-put practices, and it was never intended for the school's physical education program or classes. In addition to that, plaintiff was participating in an extracurricular recreational activity at the time of the accident. The summer camp was sponsored by the high school. It involved the sport of football. There was not mandatory participation in the camp. The plaintiff paid a fee to participate in the camp. He did not earn school credit for participation, and there was no educational component of this extracurricular summer football camp. Illinois courts have defined recreation. The OSEP case says that recreation is the refreshment of strength and spirits after toil, diversion, or play. Play suggests an opposition to work. It implies activity, often strenuous, but an absence of an aim other than amusement, diversion, or enjoyment. So here, the plaintiff was participating in a summer extracurricular football camp. It certainly could be said to be a refreshment of strength and spirits after toil. In this case, the plaintiff simply asked the court to hold that high school football and track are educational activities, even though he includes no Illinois support for this. The case law regarding Section 3106 is supportive of the motion for summary judgment. There's Bub versus Springfield School District, where a minor was injured while riding a bike on a school sidewalk and onto a grass playground. There were yellow lines painted on the sidewalk to serve for use as a four-square game for children, but the concrete sidewalk had not been specifically built for recreational purposes or for use as a playground. There, the Supreme Court said that the school intended the use of the sidewalk, partly for recreational intent, that the yellow four-square lines were suggestive of recreational intent. The Ozuck case that I mentioned before involved a minor who slipped and fell while running in a gymnasium while in gym class. He alleged that he had to run underneath a volleyball net where the floors were warped. The court said in that case that the fact that the gym was used for PE was not dispositive, that if the gymnasium was encouraged, intended, or permitted to be used for recess, and this is of importance, extracurricular activities or other recreational events, then 3-106 would apply if they were more than incidental. Also, the Lewis versus Jasper case held in unity for school playgrounds, even when the accident happened during the school activity, during school hours. And in Sylvester versus Chicago Park District, a plaintiff fell on a walkway of a parking lot which served Soldier Field. She was going to a football game. The lot was intended for and permitted football bands to park and use the walkways to access the stadium. There, the Supreme Court held that the walkway and parking lot were an integral part of the Soldier Field recreational facility and granted immunity. So for those reasons, Section 3-106 of the Tort Immunity Act applies to plaintiff's negligence count, and should the court consider that despite the jurisdictional argument, then we ask that the court confirm the trial court's order. Regarding the Wolfel and Watten count, the count two, under 3-106, public entities are immune from liability unless the entity or public employee is guilty of Wolfel and Watten conduct, approximately causing the injury. The definition of Wolfel and Watten as, regarding the Tort Immunity Act, says that the conduct requires force of action indicating more than a mere inaction. That's the Winfrey case. It cannot merely label conduct Wolfel and Watten or conclude that the conduct is Wolfel and Watten, but it must be shown through evidence and well-led facts. The Majewski case, that's a 1st District case, is on point. There, the plaintiff alleged injuries from broken glass while playing on a Park District football field. The plaintiff alleged the Park District maintained the grounds, periodically removed debris and glass from the field. He alleged that the defendant was Wolfel and Watten in failing to inspect and maintain the ground. But the court upheld the dismissal of the action, saying that Wolfel and Watten misconduct goes far beyond mere inadvertence, which may constitute ordinary negligence, but Wolfel and Watten misconduct requires a conscious disregard for the safety of others. So here, in this case, there's been a similar mislabeling of negligence allegations for Wolfel and Watten misconduct. The plaintiff alleges that the defendants failed to take appropriate steps to mow the grass. That's in the complaint. There's no support in the record that the defendants knew of a dangerous condition or that they acted intentionally or with conscious disregard. The plaintiff does not cite to any such evidence. The plaintiff admitted there was no specific route where the coaches instructed him to run, only that the campers would run, quote, wherever. And the plaintiff himself admitted that the coaches never did anything to make him feel as though they wanted to hurt him. Plaintiff relies on a couple of cases in his brief. The first is Peters v. Herron. That's this case, a 2010 case, but that involved a motion to dismiss plaintiff's amended complaint before there had been any depositions taken in this case. So based on the pleadings themselves, the allegations that plaintiff had been instructed to encounter a hazard, this court said that if the allegations could be proven, the trier of fact could decide defendants showed utter indifference or conscious disregard. But now there's been depositions in the case, and we know that plaintiff has not proven these allegations. Plaintiff himself has admitted there was no route where he was told to run. There has been no evidence that the football coaches knew or should have known about the bumper being obscured in the weeds. And there is evidence that plaintiff, while running to the practice field, stated that he was involved in a conversation, that he was looking down, that he was adjusting his chin strap. There was a lot of things going on while he was running. So the allegations remain unsupported. The other case, Manuel v. Red Hill Community School District that plaintiff relies on, involved a known student who had cerebral palsy, was asked by a teacher to serve soft drinks to basketball coaches in a gym. The stairs were wet from the snow, causing her to slip and fall. The court held that because the complaint sufficiently fled willful and wanton conduct, because the facts demonstrated utter indifference or conscious disregard for the plaintiff's safety. But there are no such facts here. There's no special medical condition. There's an absence of testimony indicating a specific danger or a special condition in the football field were known. Here, we have no evidence indicating willful and wanton course of conduct by the defendants. We have no evidence that defendants were aware of any alleged dangerous condition. We have no evidence of an alleged dangerous condition that caused any prior accidents or injuries. And we have no evidence that defendants had any intention to cause harm to Plano or an indifference or conscious disregard for his safety. I know that the court has granted the plaintiff's motion to supplement the points and authorities filed yesterday. There, he cited two cases, Bruns, the 5th District case, 2013 case, which did not involve the Tort Community Act or Section 3-106. It involved an open and obvious danger question regarding a tree in front of an eye clinic where an elderly woman fell. So that case is not on point. The Abrams case mentioned today by the plaintiff was a 1st District, 2014 case, could have been cited if plaintiffs replied brief had he chosen to file them. It involved a student who fell at a National Honor Society induction, which took place in the school's, quote, cafetorium, part cafeteria, part auditorium. And there, the court looked at what events took place in that space. It was used part time for a cafeteria, part time as an auditorium. Of importance, the court noted that there was also a gymnasium on site at the school where sporting events took place. So it used that as one factor to note that the cafetorium itself was not used for recreational purposes. So that case is distinguishable. In summary, Your Honors, plaintiff's appeal is limited to the Wilflin-Lawton issue. The only subject is notice of appeal. And the trial court's order granting summary judgment should be affirmed for the reasons stated. However, should the court consider plaintiff's arguments as to plaintiff's negligence count, despite its March 5, 2014 order denying the motion for leave to amend the record on appeal to include an amended notice of appeal, then the court should affirm the trial court's May 23, 2012 order granting defendant's summary judgment under the Illinois Tort Ability Act, section 3-106. Can I answer any questions? I don't believe so. Thank you, Your Honors. Thank you, counsel. Counsel? I don't know what to say. Okay. We appreciate the briefs and arguments of counsel. And we will take the case under advisement. I think we're actually running early, of course, under short recess. Thank you. All rise.